UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 6:19-CR-33-REW-HAI-4 |
| DENNIS C. SHUMAKER, | ) ) | RECOMMENDED DISPOSITION |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Wier (D.E. 196), the Court considers reported violations of supervised release conditions by Defendant Dennis C. Shumaker.

Judge Wier entered judgment against Defendant in July 2020 on Defendant's guilty plea to conspiracy to distribute 50 grams or more of actual methamphetamine and 40 grams or more of fentanyl. D.E. 97 (plea agreement); D.E. 171 (Judgment). Defendant was sentenced to sixty months of imprisonment (well below his Guidelines Range of 97 to 121 months) followed by five years of supervised release. Defendant was released on August 2, 2022.

**I.**

On November 16, 2023, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges a single violation of the condition that prohibits committing another federal, state, or local crime. According to the Report,

> On November 14, 2023, the defendant was arrested by the Pulaski County, Kentucky, Sheriff's Department and charged with the following: Trafficking in a Controlled Substance-1st Offense-Fentanyl-K.R.S. § 218A.1412, a Class C felony; Trafficking in Controlled Substance-1st Degree-1st Offense-Less Than 2 Grams of Methamphetamine-K.R.S. § 218A.1412, a Class D felony; and Drug

>   Paraphernalia-Buy/Possess-K.R.S. § 218A.500(2), a Class A misdemeanor. The case is filed under Pulaski County, Kentucky, District Court case #23-F-448.

The attached citation contains the following narrative:

>   Over the past month, the Pulaski County Sheriff's Office has received numerous complaints of large amounts of traffic at 115 Waycross Street consistent with illegal drug trafficking. The affiant has conducted surveillance on the residence and has stopped multiple vehicles leaving the residence, locating illegal narcotics on the individuals.
>
>   On [November 14,] I executed a search warrant at 115 Waycross Street. Detective Trent Massey located Dennis Shumaker in his vehicle, once he pulled into his driveway. Upon searching Shumaker, a vial was located containing suspected methamphetamine and suspected Fentanyl. Shumaker also had numerous syringes on his person.
>
>   Upon searching the residence, I located a concealment can which contained numerous amounts of baggies. I attempted to advise Shumaker of his rights and he told me he was aware of his rights and was willing to speak with me. Shumaker advised he just got back from Ohio. Shumaker stated he took the drugs with him and did not purchase them in Ohio.
>
>   Once I completed the search, I took the substances I located back to the Pulaski County Sheriff's Office for processing. I conducted field tests on the suspected Fentanyl and received a positive indication for Fentanyl. The Fentanyl weighed 3.6 grams. I conducted a field test on the suspected methamphetamine and it tested positive for methamphetamine. The methamphetamine weighed 1.79 grams.
>
>   Shumaker is on Federal Probation for Drug Trafficking charges. At the time this charging document was filed, I could not confirm Shumaker's federal charges, so they were charged as first offenses. The affiant believes the large amount of traffic, amounts of illegal narcotics located, additional baggies located, and the drugs located on stops of vehicles leaving the residence are indicative Shumaker possessed illegal substances with the intent to distribute.

Violation #1 is a Grade A violation under USSG § 7B1.1 because the first-degree trafficking charge is a state offense punishable by a term of imprisonment exceeding one year that is also a controlled substance offense.

2

The state charges did not lead to an indictment, so Defendant rolled into federal custody on the Court's revocation warrant. The Court conducted an initial appearance under Rule 32.1 on March 28, 2024. D.E. 198. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention and Defendant argued for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on May 6, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 201. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violation #1. *Id.*

Specifically, Defendant admitted he was guilty of possessing with intent to distribute fentanyl. He did not admit guilt on any other aspect of the charges. The government moved to dismiss all other aspects of the charged conduct aside from the possession with intent to distribute fentanyl. Defendant insisted the methamphetamine was for his own use. He also indicated that he thought the fentanyl was cocaine and he initially stated he intended to use all of it to join his wife, who recently passed away. After lengthy questioning by the Court, a detailed discussion of the meaning of possession with intent to distribute, and consultation with counsel, Defendant acknowledged the government could prove the necessary intent. He did so due to the large volume of fentanyl (about 36 dosages worth) and other contextual circumstances. Defendant also insisted he believed the fentanyl was actually cocaine. But he agreed that his knowledge of the specific type of the substance was not a necessary element of the offense.

One way of committing first-degree trafficking of a controlled substance in violation of Kentucky law is by knowingly and unlawfully trafficking in any quantity of fentanyl. Ky. Rev.

3

Stat. § 218A.1412(1)(D). "Trafficking" means "to manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance." *Id*. § 218A.101(56). Fentanyl trafficking is a Class C felony for the first offense and a Class B felony for a second or subsequent offense. *Id*. § 218A.1412(3)(a).

Thus, for purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violation #1, specifically possessing fentanyl with the intent to sell it. The United States thus established Violation #1 of the Report under the standard of section 3583(e). The Court thoroughly questioned Defendant and ensured that he truthfully answered all questions. In the Court's view, he fully understood the legal nuance and effect of his admission.

**II.**

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to a Class A felony, conspiracy to distribute 50 grams or more of crystal meth and 40 grams or more of a fentanyl mixture. *See* 21 U.S.C. §§ 841, 846. Such a conviction carries a five-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct constitutes a Grade A violation. Given Defendant's criminal history category of II (the category

4

at the time of the conviction in this District) and Grade A violation while on supervision for a Class A felony, Defendant's range, under the Revocation Table of Chapter Seven, is 27 to 33 months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

## III.

At the final hearing, the parties jointly recommended revocation with thirty months of imprisonment. They had not reached an agreement on the amount of supervision time to follow.

According to the government, a mid-Guidelines penalty was appropriate here. The key aggravator concerned the breach of the Court's trust, which was the same as the violation's relation to the underlying offense. Defendant pleaded guilty to conspiring to distribute meth and fentanyl. Now, he had been caught with meth and fentanyl again. And he admitted he possessed the fentanyl, in his words, "with intent to sell." To commit the same crime while on supervised release is egregious. Defendant had 36 dosage units of fentanyl, as confirmed by testing. And his belief that it was cocaine made it more dangerous—his fentanyl could have killed multiple people.

The government acknowledged that Defendant was grieving the death of his wife. His criminal history category is relatively low. He was not alleged to be a leader or otherwise have an aggravated role in the underlying conspiracy. He did not have a history of violence. The government was not relying on Defendant's downward departure at sentencing as an aggravator here.

5

Concerning supervision, the government argued that Defendant's repeating his conviction conduct indicates a strong need to protect the public. Although Defendant is eligible for lifetime supervision, the government requested three years. This would be short enough to provide an incentive to get off paper. But it would be long enough to gauge his ability to comply and to provide him with additional mental health and drug-abuse treatment.

The defense requested one year of supervision. Defendant is 65 years old. He needs a knee replacement. He lost his wife while he was incarcerated. Given his age and declining health, the defense argued Defendant would not be expected to pose a continuing danger to the community.

Defendant addressed the Court. He said he needs long-term drug-addiction and grief counseling. He says he is unable to forgive himself for not being there for his wife. Defendant also said earlier in the hearing that he planned at one point to overdose on the drugs he possessed and to "join" her.

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. The presence of a Grade A violation means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). And revocation is entirely appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to

the PSR, Defendant allowed a codefendant to use his residence for distributing fentanyl and crystal meth, and Defendant "also assisted in arranging and executing transactions." Defendant received both money and drugs as compensation. Here, Defendant has admitted to possessing fentanyl with the intent to sell it. And, according to the arrest citation, his residence was suspected to be a location for drug trafficking, leading to issuance of a search warrant. The connection between the revocation behavior and the underlying offense is significant and egregious.

The Court next considers Defendant's history and characteristics. Defendant here has a relatively low criminal history score of II. He was sentenced well below the Guidelines Range. At the time of his 2019 arrest, he was a daily user of meth and heroin, and was also abusing prescription pain medication. Defendant has addiction issues, which are now exacerbated by his grief. These characteristics are to some extent mitigating, yet they enhance the need for additional supervision, as supervision will give Defendant access to resources such as treatment.

Another factor concerns the need to deter criminal conduct and protect the public. Defendant's trafficking behavior here was serious. Fentanyl is deadly, and Defendant stated he believed the fentanyl was cocaine, which increases the likelihood someone could have overdosed. The significant recommended sentence and supervision term are meant to provide deterrence and protection against this sort of hazardous behavior.

Another factor focuses on opportunities for education and treatment. Defendant was already receiving drug-abuse and mental health counseling. Everyone involved believes that treatment should continue. Further supervision will make that possible.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but

secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach here was aggravated in that it involved serious criminal conduct that was a recapitulation of the underlying crime.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

The Court finds the jointly recommended penalty of thirty months' incarceration is sufficient, but not greater than necessary, to address these factors. And the Court recommends adopting the government's recommendation of an additional three-year supervision term. Given the danger Defendant poses to the community as an addict in crisis who returned to trafficking, three years is the absolute minimum amount of supervision the Court can recommend.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of Violation #1, specifically that he committed first-degree drug trafficking by possessing fentanyl with intent to sell it.

2. That, upon the government's motion, all other aspects of the violation charge be dismissed.

3. Revocation with a term of imprisonment of thirty months, followed by 36 months of supervised release on the conditions previously imposed. Defendant should be evaluated for substance abuse treatment upon release.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Wier's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 8th day of May, 2024.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge